UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL WANDICK,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>CENTRAL CALIFORNIA WOMEN'S FACILITY,<br><br>　　　　　Respondent. | Case No.   1:20-cv-00745-KES-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY [1]<br><br>FOURTEEN-DAY OBJECTION PERIOD |

## I.　　STATUS AND PROCEDURAL BACKGROUND

Petitioner Krystal Wandick ("Petitioner" or "Wandick"), a state prisoner, is proceeding pro se on her Petition for Writ of Habeas Corpus filed under 28 U. S.C. § 2254 on May 28, 2020. (Doc. No. 1, "Petition").  Petitioner challenges her judgement of conviction after a jury trial for: (1) voluntary manslaughter in violation of Penal Code § 192(a) and (2) assault with a firearm in violation of Penal Code § 245(a)(2), for which she was sentenced by the Kern County Superior Court to a determinate term of twenty-one (21) years for the count 1 offense, consisting of the upper term of eleven (11) years and a consecutive upper term of ten (10) years for the section

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

12022.53(d) gun enhancement.[2] (Case No. BF167698A). (Doc. No. 15 at 4, 7; Doc. No. 16-10 at 7).[3] The Fifth Appellate District Court affirmed Wandick's judgment on direct appeal (Case No. F077006). (Doc. No. 16-13). On January 15, 2020, the California Supreme Court summarily denied Wandick's petition for review (Case No. S259275). (Doc. No. 16-15).

The Petition presents one ground for relief (restated): there was insufficient evidence to convict Petitioner of voluntary manslaughter. (Doc. No. 1 at 7). By way of background, the Petition asserted four grounds for relief. (*See generally* Doc. No. 1). On June 03, 2020, upon screening, the Court found the Petition presented both exhausted and unexhausted grounds, and ordered Petitioner to show cause why her petition should not be dismissed as a mixed petition. (Doc. No. 4). On July 11, 2020, Petitioner notified the Court that she elected to proceed with a *Kelly* stay and to dismiss her unexhausted grounds (first, third and fourth grounds). (Doc. No. 6). On June 15, 2020, the court took notice of Petitioner's dismissal of her three unexhausted claims, deemed the petition amended to dismiss the first, third and fourth claims, and stayed and held in abeyance the Petition so that Petitioner could exhaust those claims. (Doc. No. 8). On June 25, 2020, Petitioner notified the court that she wished to proceed only with her exhausted claim. (Doc. No. 9). On July 2, 2020, the Court lifted the stay and ordered the respondent to respond to Petitioner's Petition as previously deemed amended, i.e. respond to the sole exhausted ground for relief: ground two. (Doc. No. 10).

Respondent filed an Answer (Doc. No. 15), arguing the sole ground for relief is without merit, and lodged the state court record in support (Doc. No. 16, 16-1 through 16-15). Petitioner elected not to file a reply. This matter is deemed submitted on the record before the Court. After careful review of the record and applicable law, the undersigned recommends the district court deny Petitioner relief on her Petition and decline to issue a certificate of appealability.

////

////

---

[2] Sentence for count 2 was imposed and stayed pursuant to section 654. (Case No. BF167698A). (Doc. No. 15 at 4, 7; Doc. No. 16-10 at 7).

[3] All citations to the pleadings and record are to the page number as it appears on the Case Management and Electronic Case Filing ("CM/ECF") system.

## II. GOVERNING LEGAL PRINCIPLES

### A. Evidentiary Hearing

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Here, the state courts adjudicated Petitioner's sole claim for relief on the merits. This Court finds that the pertinent facts of this case are fully developed in the record before the Court; thus, no evidentiary hearing is required. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B. ADEPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on the merits, then the AEDPA mandates a deferential, rather than *de novo*, review. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and intentionally difficult to satisfy. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 572

3

1  U.S. at 419.  Habeas relief is appropriate only if the state court decision was "contrary to, or an
2  unreasonable application of," that federal law.  28 U.S.C. § 2254(d)(1).  A decision is "contrary
3  to" clearly established federal law if the state court either: (1) applied a rule that contradicts the
4  governing law set forth by Supreme Court case law; or (2) reached a different result from the
5  Supreme Court when faced with materially indistinguishable facts.  *Mitchell v. Esparza*, 540 U.S.
6  12, 16 (2003).

7       A state court decision involves an "unreasonable application" of the Supreme Court's
8  precedents if the state court correctly identifies the governing legal principle, but applies it to the
9  facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S.
10 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from
11 [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to
12 extend that principle to a new context where it should apply."  *Williams v. Taylor*, 529 U.S. 362,
13 407, (2000).  "A state court's determination that a claim lacks merit precludes federal habeas
14 relief so long as fair-minded jurists could disagree on the correctness of the state court's
15 decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  The petitioner must show that the
16 state court decision "was so lacking in justification that there was an error well understood and
17 comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103.

18      When reviewing a claim under § 2254(d), any "determination of a factual issue made by a
19 State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting
20 the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt*
21 *v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable
22 merely because the federal habeas court would have reached a different conclusion in the first
23 instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

24      Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any
25 constitutional error had a "substantial and injurious effect or influence" on the verdict.  *Brecht v.*
26 *Abrahamson*, 507 U.S. 619, 637 (1993).  As the Supreme Court recently explained, while the
27 passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't
28 eliminate *Brecht's* actual-prejudice requirement.  *Brown v. Davenport*, ⸺ U.S. ⸺, 142 S. Ct.

1510, 1524, 212 L.Ed.2d 463 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies.") (*citing Fry v. Pliler*, 551 U.S. 112, 121, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)). In short, a "federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to grant relief, a court must find that the petition has cleared both tests." *Id*. at 1524.

As discussed *supra*, for the deferential § 2254(d) standard to apply there must have been an "adjudication on the merits" in state court. An adjudication on the merits does not require that there be an opinion from the state court explaining the state court's reasoning. *Richter*, 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 99-100. This presumption applies whether the state court fails to discuss all the claims or discusses some claims but not others. *Johnson v. Williams*, 568 U.S. 289, 293, 298-301 (2013).

While such a decision is an "adjudication on the merits," the federal habeas court must still determine the state court's reasons for its decision in order to apply the deferential standard. When the relevant state-court decision on the merits is not accompanied by its reasons,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The federal court "looks through" the silent state court decision "for a specific and narrow purpose—to identify the grounds for the higher court's decision, as AEDPA directs us to do." *Id*. at 1196.

////

5

### III.  RELEVANT FACTUAL BACKGROUND

The Court adopts the pertinent facts of the underlying offenses, as summarized by the California Fifth District Court of Appeal.  A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

**Factual and Procedural Background**

> The afternoon of March 16, 2017, Shkira Rowel[FN2] went to a party on Reese Avenue in Bakersfield at the home of Wandick's grandmother.  Wandick, her boyfriend, Darrell Washington, and the victim Albert King were at the party.  Wandick, Shkira, and King had known each other for most of their lives. Antwan arrived at the party later.  The group started drinking alcohol.
>
> Later that evening, the group went to another party at a location on Gordon Street.  King was given a ride to the Gordon Street address by Wandick's cousin, who dropped King off and left.  Everyone went to the backyard area where the party was primarily located.  About 15 to 20 other people were at the party.  Everyone continued to drink alcohol.
>
> About an hour after they arrived at the party on Gordon Street, Shkira heard Wandick complaining loudly.  Shkira and Antwan heard King yell at Wandick to be quiet.  Wandick and King argued back and forth and then Shkira saw Wandick push King in the face with her hand.  Both Shkira and Antwan then saw King grab Wandick by the throat.  Others at the party immediately separated Wandick and King.  Wandick did not lose consciousness when King grabbed her throat.
>
>> [FN2] Shkira Rowel and her brother, Antwan, share the same last name. They will be referred to by their first names for clarity.
>
> The party ended around 30 minutes after the argument.  Everyone from the party started to leave.  Antwan and Shkira walked toward Shkira's car parked at the front of the house.  Shkira agreed to give Wandick and Washington a ride back to the house on Reese Avenue.  Antwan was in the driver's seat; Shkira was in the front passenger seat; Washington was behind Antwan; and Wandick was behind Shkira.
>
> As Antwan began driving away, Wandick asked him to stop and go back to the house on Gordon Street.  Antwan made a U-turn and drove back, stopping in the street in front of the house.  Shkira believed the headlights of the car remained on; Antwan could not recall.
>
> After the car pulled to a stop, Shkira began changing the disk in the CD player.  As she was doing so, she heard Wandick's car door open.  Antwan saw Wandick get out of the car and walk toward the area where Kind was standing.  Wandick had her back toward the

car and King was facing the car. Antwan told detectives that he saw Wandick and King arguing, saw King drop to the ground, and then heard shots coming from behind and drove off.

When Shkira heard the first gunshot, she crouched down. She saw Washington was still in the backseat. Shkira heard at least five gunshots and bullets struck the car. She told Antwan to drive away. As they drove away, Antwan and Shkira realized Washington was noy in the car, but Wandick was in the back seat.

Shkira asked Wandick what had happened and Wandick replied, "I shot him." Shkira grabbed Wandick and Wandick stated, "just kill me." Antwan could not hear the conversation clearly because of music playing in the car but thought Wandick said something like "did I shoot him." Antwan drove to Shkira's apartment and the two went inside; Wandick went elsewhere.

Wandick's cousin returned to the party shortly before the shooting, around 2:45 a.m. As she walked from her car towards the house, she heard gunshots and dropped to the ground. She stayed on the ground until the gunshots ended and started back to her car. She saw King walk up to her car; he had blood coming out of his mouth. She drove King to a nearby fire station, where he died.

An autopsy revealed that King died as a result of a gunshot wound to his chest. The bullet entered King's right front chest and lodged in the middle of his back, near the spine. The bullet was a small caliber.

Sheriff's deputies recovered shell casings from in front of the Gordon Street house. There were seven .45-caliber casings and one .25-caliber casing. An inspection of Shkira's car disclosed that all the bullets fired at the car appeared to be concentrated in the right rear passenger area. Law enforcement knew that the area of the shooting was known as Crips street gang territory. It also was known that Washington was affiliated with the Bloods street gang, rivals of the Crips.

Five days after the shooting, Wandick was apprehended in Oildale. Oildale is outside the Crips territory. Wandick was hiding out in Oildale because she believed she was going to be killed because people believed she killed King. When interviewed, she at first denied seeing King in front of the Gordon street house. Later, she admitted hearing King say about her and Washington, "this bitch be havin[g] a blood nigga in the hood." Wandick admitted knowing that Washington was a member of the Bloods gang.

Wandick claimed a man in a black hoodie, whose face she could not see, did the shooting. She also claimed at first that she got a ride from a woman to a store near the Gordon Street house where she called her cousin for a ride home. Later, Wandick admitted fleeing Gordon Street in Shkira's car. Wandick denied saying, "I shot him" to Shkira.

7

> An information was filed charging Wandick in count 1 with murder, in violation of section 187, subdivision (a) and in count 2 with a firearm, in violation of section 245, subdivision (a)(2). It was alleged the murder was willful, deliberate, and premeditated. A section 12022.53, subdivision (d) enhancement was alleged as to count 1 and a section 12022.5, subdivision (a) enhancement was alleged as to count 2.
>
> A jury found Wandick guilty of the lesser included offense of voluntary manslaughter on count 1 and found the enhancement true. The jury also found Wandick guilty on count 2 and the enhancement appended thereto to be true.
>
> The trial court imposed a term of 11 years for the count 1 offense and 10 years for the enhancement. The term imposed for count 2 was stayed pursuant to section 654. Wandick filed a timely notice of appeal.

(Doc. No. 16-13 at 3-6).

## IV.   ANALYSIS

Respondent acknowledges that Petitioner's single ground for relief was raised on direct appeal to the Fifth Appellate District Court, denied on the merits (Doc. No. 16-13 at 1-9), subsequently raised, and summarily denied by the California Supreme Court (Doc. No. 16-15 at 2). Thus, the sole ground is exhausted, and the Court looks to the Fifth Appellate District's reasoned decision in evaluating Petitioner's claim under the deferential standard.

Petitioner contends that she could not have shot the victim because she was never identified as the shooter at trial. (Doc. No. 1 at 7). She claims she never had a gun in her possession and that no testimony was given to indicate she possessed any weapon on the night of the incident. (*Id*. at 5). Petitioner also challenges the testimony given by Shkira and Antwan about the statements she made in the car after King was shot. (*Id*. at 7). According to Petitioner, both witnesses were highly intoxicated at the time of the incident, neither could "remember everything," and Shkira's "story changed" about Darell Washington being in the car at the time of the shooting. (*Id*.). Thus, Petitioner claims the jury's reliance on Shkira's and Washington's testimony in identifying her as the shooter was unreasonable. (*Id*.). Respondent argues that the state appeal court's denial of Petitioner's claim, which was undisturbed by the California Supreme Court, was not contrary to, or an unreasonable application of, federal law. (Doc. No. 15 at 9-10 (citing Doc. No. 16-13 at 6-9)). Respondent contends that Petitioner is attempting to

reweigh the trial evidence in her favor, and that the state court reasonably rejected this argument. (Doc. No. 15 at 10).

### 1. State Court Decision

The Court of Appeal considered and rejected Petitioner's insufficiency of the evidence claim finding it was without merit.

> Wandick challenges the sufficiency of the evidence to support her convictions. She maintains the evidence is insufficient to establish beyond a reasonable doubt that she was the one who shot King.
>
> **Standard of Review**
>
> In reviewing the sufficiency of the evidence, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507 (*Cravens*).) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*Cravens*, *supra*, 53 Cal.4th at p. 508.) The standard of review is the same in cases in which a conviction is based primarily on circumstantial evidence. (*People v. Clark* (2016) 63 Cal.4th 522, 625.)
>
> As stated by the Supreme Court, in assessing sufficiency of the evidence to support a conviction, this court:
>
>> "review[s] the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime ... beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict-i.e., evidence that is reasonable, credible, and of solid value-such that a *reasonable trier of fact* could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] ... 'We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon *no hypothesis whatever* is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, first italics in original, later italics added; see *People v. Rangel* (2016) 62 Cal.4th 1192, 1212-1213; *People v. Edwards* (2013) 57 Cal.4th 658, 715.)

9

" ' "If the circumstances reasonably justify the [jury's] findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment." ' " (*Cravens*, *supra*, 53 Cal.4th at p. 508.)

**Analysis**

Here, there is ample evidence from which a reasonable jury could have found beyond a reasonable doubt that Wandick was the person who shot King. "The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)

Wandick had a motive to kill King. They had argued at the party and were arguing in the street just before he was shot. Wandick also admitted overhearing a derogatory remark made by King about her and Washington. Evidence of motive is ordinarily the incentive for criminal behavior and motive renders inferences more reasonable. (*People v. McKinnon* (2011) 52 Cal.4th 610, 655.)

Furthermore, Wandick was standing directly in front of and facing King when he was shot in the right front chest. Antwan heard Wandick and King arguing, then saw King fall to the ground. King was shot with a small caliber bullet; one small caliber casing was found on Gordon Street. After the shooting, Shkira testified that Wandick stated, "I shot him."

"Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction." (*People v. Elliott* (2012) 53 Cal.4th 535, 585; see Evid. Code, § 411.) Any doubts about identification are for the trier of fact to resolve. (*Elliott*, *supra*, at p. 585.) "[W]hen the circumstances surrounding the identification and its weight are explored at length at trial, [ and] where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court." (*In re Gustavo M* (1989) 214 Cal.App.3d 1485, 1497.) The testimony of Antwan and Shkira provides ample circumstantial evidence establishing that Wandick shot King. (*People v. Clark*, *supra*, 63 Cal.4th at p. 625.)

Wandick also gave false information to law enforcement when first questioned. She initially claimed not to have seen King in front of the Gordon Street house. Wandick also falsely claimed initially that she did not leave the scene of the shooting with Antwan and Shkira. False statements regarding potentially incriminating circumstances constitute evidence which may support an inference of guilt. (*People v. Showers* (1968) 68 Cal.2d 639, 643; *People v. Beyah* (2009) 170 Cal.App.4th 1241, 1249.)

Granted, Wandick denied ever stating, "I killed him" to Shkira. Wandick also claimed that an unknown man in a black hoodie shot King. However, resolution of conflicting evidence and credibility issues are for the trier of fact to decide. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331.)

10

> Thus, as shown above, based on the evidence viewed in the light most favorable to the judgment, Wandick's actions and statements, and the reasonable inferences therefrom, constitute substantial evidence supporting the verdict. (See *In re V. V.* (2011) 51 Cal.4th 1020, 1026 [if the evidence "reasonably justif[ies] the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment"].)

(Doc. No. 16-13 at 5-8); *People v. Wandick*, No. F077006.

### 2. Federal Habeas Analysis

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The federal standard for determining the sufficiency of the evidence to support a jury finding is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2012) ("the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality"); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (a reviewing court "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury").

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *Juan H. v. Allen*, 408 F.3d 1262, 1275-76 (9th Cir. 2005). The reviewing court should look to state law for the elements of the offense and then turn to the federal question of whether any rational trier of fact could have found the essential elements of the crime supported by sufficient evidence beyond a reasonable doubt. *See Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018).

Further, when both *Jackson* and AEDPA apply to the same claim, the claim is reviewed under a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As noted by the Supreme Court:

11

> First, on direct appeal, "it is the responsibility of the jury–not the court–to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' "

*Coleman*, 566 U.S. at 651.

Here, the Court of Appeal , although not citing to *Jackson*, applied the same test and determined there was sufficient evidence to support the jury's finding of voluntary manslaughter within the meaning of California law.  California law defines voluntary manslaughter as the unlawful killing of a human being without malice. *See People v. Bryant,* 56 Cal. 4th 959, 967 (2013).  A defendant lacks malice and is guilty of voluntary manslaughter in limited, explicitly defined circumstances: either when the defendant acts in a sudden quarrel or heat of passion, or when the defendant kills in unreasonable self-defense.  *See People v. Blakeley,* 23 Cal. 4th 82, 87 (2000).  A jury may find an unlawful killing is voluntary manslaughter if it reasonably concludes that there was sufficient provocation to inflame strong passions and obscure the killer's reason and judgement.  *People v. Lee,* 20 Cal. 4th 47, 60 (1999); *see People v. Breverman,* 19 Cal. 4th 142, 163 (1998), *overruled in part by People v. Schuller,* 15 Cal. 5th 237, 260 n. 7 (2023), (provocation must be sufficient to cause an "ordinary [person] of average disposition … to act rashly or without due deliberation and reflection, and from this passion rather than from judgement.").

Petitioner does not explain how the state court decision was objectively unreasonable under controlling federal law.  The jury heard testimony that Wandick overheard King make a derogatory remark about her and Washington; testimony that Wandick and King had argued earlier that night and were arguing in the street before King was shot; evidence that Wandick was standing directly in front of and facing King when he was shot in the right front chest with a small caliber bullet; evidence that a small caliber casing was found near where Petitioner stood in front of King when he was shot; and further testimony that Shkira heard Petitioner state "I shot him"

after the shooting. (Doc. No. 16-5 at 130-134, 155-156, 190-194; Doc. No. 16-6 at 94-101, 124-125, 250). While Petitioner denied ever saying, "I killed him" to Shkira and claimed instead that an unknown man in a black hoodie shot the victim, any doubts about identification are for the jury to resolve. *See People v. Elliott,* 53 Cal.4th 535, 585 (2012). The jury had before it, and presumably considered, the evidence regarding Antwan and Shkira's level of intoxication, ability to recall the incident, and reliability as witnesses. (Doc. No. 16-5 at 147-148, 151; Doc. No. 16-6 at 32, 84; 16-7 at 54). A rational trier of fact could have reasonably relied on the evidence presented to identify Wandick as King's shooter, and it is not the Court's role to reweigh the evidence. *Cavazos*, 565 U.S. at 7 n.* (reweighing of the facts is precluded by *Jackson*); *Nevils*, 598 F.3d at 1170 (in assessing sufficiency of the evidence claim, it is not the court's function to reweigh the evidence). Indeed, the Court is required to resolve all conflicting evidence in favor of the judgment. (*Id.*). The Court of Appeal was objectively reasonable in determining that, "based on the evidence viewed in the light most favorable to the judgment, Wandick's actions and statements, and the reasonable inferences therefrom, constitute substantial evidence supporting the verdict." (Doc 16-3 at 8-9).

In summary, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Petitioner shot King in the heat of passion within the meaning of voluntary manslaughter as defined by California law. As such, the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor an unreasonable determination of the facts. The undersigned recommends the sole ground for relief in the Petition be denied.

### V. CERTIFICATE OF APPEALABIILTY

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

Accordingly, it is **RECOMMENDED**:

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) be denied; and
2. Petitioner be denied a certificate of appealability.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     October 23, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE